[See Case No. 6,547.]

---

## Case No. 6,549.

### Ex parte HOBBS.

### In re HAPGOOD.

[2 Lowell, 491;[1] 14 N. B. R. 495.]

District Court, D. Massachusetts. Sept., 1876.

BANKRUPTCY- FOLLOWING TRUST FUNDS.

1. Where a bankrupt, being trustee, has deposited trust money, with his own, in a bank, in his own name. his cestuis que trustent, or he as representing them, may have a trust declared in the trust-moneys.

2. The apportionment of the balance of the bank account may be ascertained from the dates of deposits and withdrawals of the trust, and the general funds, respectively.

Mr. Hapgood, the bankrupt, was trustee, under a private assignment made by S. Sutton & Co. for the benefit of their creditors. In the course of settling that estate, he sold machinery and other assets, and paid certain charges and privileged debts; and in February, 1876, he had received $1,500 or thereabouts more than he had paid out. The money received, when not paid out at once, was deposited in the Revere National Bank with Hapgood's own money and to his own

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

credit; and he testified that his average monthly balance in the bank was always equal to the amount due from him as trustee. In February, 1876, finding himself insolvent, he opened an account in the same bank as trustee. and drew out the $1,500 from his individual account, and deposited it to the new account. Within two months afterwards, he was adjudged bankrupt; and his assignee petitions to have this money so deposited to the new account declared to be assets for the general creditors of Hapgood, as having been set apart by way of preference. The bank submits to whatever decree the court may make. Hapgood defends on the ground that no preference was intended or was effected.

R. M. Morse, Jr., for the assignee, cited Bank of Commerce v. Russell [Case No. 884]; In re Hosie [Id. 6,711]; White v. Jones [Id. 17,550]; In re Janeway [Id. 7,208]; [In re Coan [Id. 2,915]; Wood M. & R. Co. v. Brooke [Id. 17,980];[2] School Dist. v. First Nat. Bank, 102 Mass. 174.

C. H. Fiske, for Hapgood, cited Pennel v. Deffell, 4 De Gex, M. & G. 372; Ex parte Sayers, 5 Ves. 169.

LOWELL, District Judge. The question raised by the case stated and submitted by the petition and answer, and which is thus brought within the jurisdiction of the court without the formality of a plenary action, is whether the bankrupt gave a preference to himself as trustee, by transferring a part of his bank account from his own name to himself as trustee. This question cannot be answered fully upon the facts as yet proved.

If it be true that the change in the form of the account operated to set apart a greater proportion of the deposit than was already affected by the trust, upon the principles presently to be explained, then it was an unlawful preference to that extent. In the United States it has been held, without qualification, that an insolvent has no greater right to pay or secure debts which he is under a very strong moral obligation to pay, than any others. On the whole, I consider this rule the only safe one; but it works hardship in some cases. If it be true that the now bankrupt deposited the trust money with his own account, simply for convenience. and always kept enough in the bank to enable him to pay out at any moment what he owed the creditors of Sutton & Co., it was the merest technical preference that he committed in setting apart that amount when he became aware of his insolvency. Still, it was a technical preference under the decisions, because he was merely a debtor to the trust; and he transferred a credit from himself, as an individual, to himself as a trustee, in order to make his trust secure.

But the defendant presents the case in another point of view, which is important: He says that if it be true that his general deposit of the trust funds and his own together made him a debtor to the trust, and subjected him personally to make good any loss that might occur from the failure of the bank, or from any set-off the banker might have against him, still his cestuis que trustent, and he as representing them, may have a trust declared in these moneys, and would have had such a right after his bankruptcy, though no separation had been made before that time. He cites Pennel v. Deffell, 4 De Gex, M. & G. 372. In that case an official assignee had two bank accounts standing in his own name, in which he deposited moneys belonging to various bankrupt estates, and moneys of his own. He died insolvent, and the contest was between his general creditors and his creditors in the trust; and the court decided, upon reasoning which is satisfactory to my mind, that a trust ought to be declared, not for the general creditors exclusively, but according to the facts; that is to say, taking the deposits and the withdrawals in the order of their dates, find out how much of the balance remaining at the death of the trustee belonged to the trust, how much to the general fund, and divide accordingly. They refused to admit that the whole should be attributed to the trust, until that was made good, any more than that the whole should be general assets. One of the learned judges says, that, if the former were the rule, it would follow that in all cases where trust moneys were paid by a trustee into a bank, they must be held to have remained there so long as the trustee may have had moneys of his own there to answer his drafts, whatever may have been the dealings with the account, and however long it may have continued.

There is no doubt that the assignee in bankruptcy is bound by all trusts and equities which attach to any property in the hands of the bankrupt. If the bankrupt had deposited his trust money. and nothing else, in a bank, the cestui que trust could follow it, whatever the name in which the account was kept: Kip v. Bank of New York, 10 Johns. 63. If, on the other hand, it had all been put in the bankrupt's name as trustee, the converse would be true: his general creditors could have it, if they could prove property in it. In either case, the only essential would be to trace the property. The only difficulty arises from the confusion of the trust money and the debtor's own money; and the case cited points out a reasonable and just mode of disentangling the account. It says: Prove what trust money has been paid in, and what of the bankrupt's money and when, and prove what has been drawn out and when; then, by striking the account at any time, you will find how the balance in the bank is to be apportioned, because you will see how that balance orig-

---

[2] [From 14 N. B. R. 495.]

inated, whether from trust money or not, or in what proportions.

I adopt that mode of settlement. The bankrupt may state the account, and ascertain how much, if any, of the money transferred 29th February, 1870, was trust money according to the method above mentioned; and for that sum he may retain the deposit. For any deficiency, he, as trustee, must take a dividend concurrently with his general creditors out of the general assets.